109 Ariz. 433 (1973)
511 P.2d 168
In the Matter of ONE 1965 ECONOLINE, I.D. NO. E16JH702043, ARIZONA LICENSE NUMBER EC-7887.
Jon Lloyd BOULET, Appellant,
v.
The STATE of Arizona, Appellee.
No. 10901-PR.
Supreme Court of Arizona, In Banc.
June 25, 1973.
Rehearing Denied September 18, 1973.
*434 Finn & Van Baalen, by Peter T. Van Baalen, Phoenix, for appellant.
Thelton D. Beck, Former Yavapai County Atty., G. Eugene Neil, Yavapai County Atty., Prescott, for appellee.
CAMERON, Vice Chief Justice.
This is an appeal by Jon Lloyd Boulet from a judgment of the Superior Court of Yavapai County forfeiting Boulet's 1965 Ford Econoline to the State pursuant to § 36-1041 et seq., A.R.S. The Court of Appeals, Division One, reversed, 17 Ariz. App. 64, 495 P.2d 504 (1972). The case is before us on the State's petition for review.
We consider only one question and that is: What is the constitutionally permissible scope of a warrantless inventory search of an automobile taken into possession by law enforcement officials?
The facts necessary for a determination of this matter on appeal are set forth in the opinion of the Court of Appeals as follows: "* * * On May 27, 1970, at 1:00 p.m., Arizona Highway Patrolman Fred Reid encountered a Ford van on the righthand shoulder of State Highway 79 in Yavapai County. The vehicle appeared to be immobile and to have been either in an accident or abandoned. Officer Reid approached the vehicle and observed Boulet inside sitting on a makeshift bed. A .22 caliber rifle was standing next to Boulet. Officer Reid attempted to get Boulet to leave the vehicle but he replied that he was `scared to come out.' Officer Reid stated that Boulet was unresponsive to questioning and incoherent and that there was something obviously wrong with him, but there was no smell of alcohol and he had no reason to suspect Boulet of being under the influence of alcohol. Boulet ultimately left the van stating that there had been an accident. Officer Reid informed Boulet that his van would have to be towed away and Boulet consented. Officer Reid also informed Boulet that he was going to inventory Boulet's vehicle and he neither asked for nor received Boulet's consent to make the inventory.
"After calling a two truck Officer Reid opened the rear door of the van. As he did a small suitcase fell out and he commenced his inventory with that item. The second item that he picked up was a shaving satchel, which he opened and in which he saw five bags of white substance, some pills, a needle, a syringe and a spoon. At this point Officer Reid stopped the inventory, placed Boulet under arrest and called for a narcotics agent. The van was towed to the Justice of the Peace Court in Camp Verde, Arizona, where Officer Reid and the narcotics agent, Ron Joseph, obtained a search warrant. The officers then searched the van and found marijuana in a useable quantity.
"Officer Reid admitted that at the time he was conducting the inventory of the vehicle he did not have probable cause to believe a crime was being committed with the vehicle or by Boulet and did not have a search warrant, but was merely following the Arizona Highway Patrol policy on inventories."
The Fourth Amendment to the United States Constitution guarantees "the right of the people to be secure in their persons, houses, papers, and effects * * *", and absent some compelling or extenuating circumstances, the police must obtain a search warrant before invading the rights of the individual protected by the Fourth Amendment. This protection which the Fourth Amendment affords the individual, however, is not from all searches, but only from those which are unreasonable, Cooper v. California, 386 U.S. 58, *435 87 S.Ct. 788, 17 L.Ed.2d 730 (1967) and United States v. Rabinowitz, 339 U.S. 56, 70 S.Ct. 430, 94 L.Ed. 653 (1950), and exceptions have been generally recognized when the area to be searched is an automobile. The search of an automobile as an incident to arrest is generally allowed without warrant, Preston v. United States, 376 U.S. 364, 84 S.Ct. 881, 11 L.Ed.2d 777 (1964), as is a search based on probable cause under certain exigent circumstances. Carroll v. United States, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925) and Chambers v. Maroney, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970).
An additional exception has arisen when law enforcement officials have taken automobiles into custody and have insisted on inventorying the contents of the automobile presumably for the protection of the defendant and for the officer's own protection against charges of theft, or when searching for dangerous articles such as explosives.
Some courts have held that an inventory is not a search within the meaning of the Fourth Amendment and have thus avoided any question of reasonableness under the Fourth Amendment. People v. Sullivan, 29 N.Y.2d 69, 323 N.Y.S.2d 945, 272 N.E.2d 464, 48 A.L.R.3d 527 (1971). Of course, the defendant who has suffered an intrusion by law enforcement officials into his personal effects is not concerned with the legal niceties as to whether it was an inventory or a search which discovered the contraband that resulted in his being criminally prosecuted. We prefer, as did the Court of Appeals, to view the inventory as a search under the Fourth Amendment and therefore look to the reasonableness of that search. The United States Supreme Court has not spoken directly on this subject at this writing though the United States Supreme Court has held admissible items discovered while inventorying an automobile impounded as evidence. Harris v. United States, 390 U.S. 234, 88 S.Ct. 992, 19 L.Ed.2d 1067 (1968); Cooper v. California, supra.
Where the courts have allowed an inventory search, cases generally hold that there are two essential requirements for a valid inventory search of an automobile without a warrant. First, the law enforcement officials must have lawful custody or possession of the automobile. People v. Greenwood, 484 P.2d 1217 (Colo. 1971); People v. Nagel, 17 Cal. App.3d 492, 95 Cal. Rptr. 129 (1971); United States v. Pannell, 256 A.2d 925 (D.C.App. 1969); Heffley v. State, 83 Nev. 100, 423 P.2d 666 (1967).
A second requirement according to many cases is that the police must have acted in good faith in conducting the inventory and must not have used the inventory procedure as a subterfuge for a warrantless search. For example, in Pigford v. United States, 273 A.2d 837 (D.C.App. 1971), it was stated:
"* * * These circumstances, we think, militate strongly against any conclusion that the search of the car was for inventory purposes; rather, they are persuasive that the search was `exploratory and therefore forbidden.' We hold the purported inventory search and seizure illegal." Pigford v. United States, supra, 273 A.2d at 840.
We believe that there has been unnecessary confusion caused by insisting upon an either/or requirement as to the motives for inventorying the contents of the automobile. It is unrealistic to require that in justifying the inventory search the police must affirm that they had no hope or expectation of finding something incriminating. What makes an inventory search reasonable under the requirements of the Fourth Amendment is not that the subjective motives of the police were simplistically pure, but whether the facts of the situation indicate that an inventory search is reasonable under the circumstances. In the instant case, the officer had lawful possession of the automobile. To have left defendant in control of the automobile under the circumstances was certainly not warranted. Before turning the automobile over to the tow truck operator *436 the officer had an obligation to inventory the contents of the automobile. We believe that the inventory search without a warrant was reasonable under the circumstances.
Having held the inventory of the vehicle was reasonable under the circumstances, we must determine the limits to which the inventory may be extended. The Court of Appeals held that the police officer had the right to inventory what was in plain sight, but that the inspection of the contents of the "shaving satchel" containing the contraband was unreasonable and what was found was therefore suppressible. This rationale has been followed by a recent California Supreme Court case which stated:
"We have no doubt that the police, in the course of such valid protective measures, may take note of any personal property in plain sight within the automobile being taken into custody. Any objects clearly visible without probing.  including the suitcase in this instance  may be listed in an inventory or other police report. (citations omitted) What concerns us here is the reasonableness of the search into the closed suitcase.
* * * * * *
"* * * The line of authority in the Courts of Appeal which purports to validate an inventory of articles not in plain sight is disapproved." Mozzetti v. Superior Court of Sacramento County, 3 Cal.2d 699, 94 Cal. Rptr. 412, 417-420, 484 P.2d 84, 89-92 (1971).
We do not agree with the rationale that while it is reasonable to inventory the vehicle in the first instance for those things which are in clear or plain view, it becomes unreasonable to inventory what is not in plain view. If one of the reasons for conducting the inventory is to safeguard valuables which might be present, it is illogical to prohibit law enforcement officials from searching those areas wherein valuables are most likely to be placed. We agree with the statement by Ronald W. Szwajkowski in the University of Illinois Law Forum:
"If the purpose of the inventory is to record the valuables and other personal property found in the car, it would seem unrealistic to limit the search to a superficial inspection of the vehicle. In view of the fact that a person who does carry valuables in his car will most properly place them in as safe and inconspicuous place as possible, the conscientious investigator will conduct as thorough a search as circumstances permit." 1968 University of Illinois Law Forum 401 at 407.
We hold therefore that the inventory search in the instant case was not only reasonable and permissible within the meaning of the Fourth Amendment of the United States Constitution, but the search could reasonably extend to the shaving satchel.
The decision of the Court of Appeals, 17 Ariz. App. 64, 495 P.2d 504 (1972), is vacated and the judgment of the Superior Court of Yavapai County is affirmed.
HAYS, C.J., and STRUCKMEYER and HOLOHAN, JJ., concur.
LOCKWOOD, Justice (dissenting):
I am of the opinion that the Court of Appeals was correct in holding that the inspection of the contents of the "shaving satchel" containing the contraband was unreasonable and what was found was therefore suppressible. As was said by the California Supreme Court: "Any objects clearly visible without probing  including the suitcase in this instance  may be listed in an inventory or other police report. (Citations omitted.) What concerns us here is the reasonableness of the search into the closed suitcase." Mozzetti v. Superior Court of Sacramento County, 4 Cal.3d 699, 707, 94 Cal. Rptr. 412, 417, 484 P.2d 84, 89, (1971). (Emphasis in original.)
In this case the search was opening the "shaving satchel". I believe opening the *437 closed shaving satchel was unduly stretching the "inventory" under the circumstances of this case, when no probable cause existed for an arrest.